[Civ. No. 4864.  First Appellate District, Division Two.—March 23, 1925.]

## LELAND ROSENER, Appellant, v. HANLON DRYDOCK AND SHIPBUILDING COMPANY (a Corporation), Respondent.

[1] CONTRACTS — EMPLOYMENT AS CONSULTING ENGINEER — BREACH— PLEADING—ISSUES—APPEAL.—In this action to recover a balance alleged to be due plaintiff upon a contract with defendant by which plaintiff was to act as consulting engineer in the building of a marine railway drydock, it being alleged in the answer that plaintiff did not perform his contract, in that plaintiff failed to build a drydock of the highest class or design or as nearly perfect as plaintiff knew how to build it and failed to build a drydock that could be operated by inexperienced operators without danger of a breakdown, and that because of this failure and negligence on the part of plaintiff, defendant was compelled to rebuild and replace portions of the machinery designed and provided therefor, to its damage in excess of the amount claimed by plaintiff, and plaintiff having tried the case without objection to evidence relating to the absence of a tachometer and sought by evidence offered on his own behalf to explain and excuse the absence thereof, it was too late for plaintiff to complain for the first time on appeal that such issue was not specifically set forth in the pleadings.

[2] ID.—ORAL MODIFICATION OF WRITTEN CONTRACT—PLEADING—ERROR WITHOUT PREJUDICE.—In such action, any error of the trial court in permitting defendant, by amendment to its answer, to set up alleged oral agreements modifying and changing the written contract between the parties did not require a reversal on appeal of the judgment entered in favor of defendant, where the findings of the trial court, supported by sufficient evidence, upon the issues relating to the failure of plaintiff to perform his written contract, fully supported the judgment in favor of defendant.

[3] ID.—EXPERT DRYDOCK BUILDER—KNOWLEDGE REQUIRED.—When a person holds himself out as an expert in the matter of designing and building drydocks, he should be held to a knowledge of the use and necessity for a safety device which is practically indispensable and in general use and well known to the profession, and which had been installed at another large drydock under his general supervision.

[4] ID.—BREACH — DAMAGE SUFFERED—EVIDENCE—FINDING.—In this action to recover a balance alleged to be due plaintiff upon a contract with defendant by which plaintiff was to act as con-

sulting engineer in the building of a marine railway drydock, while the evidence introduced by defendant might have been more specific in the matter of the amount of damage suffered by it as the result of plaintiff's breach of his contract, there was evidence to support the conclusion of the trial court that the damage suffered by defendant exceeded the claim of plaintiff.

(1) 3 C. J., p. 791, n. 20; 4 C. J., p. 703, n. 71 New, p. 879, n. 84, 89.    (2) 4 C. J., p. 877, n. 80; 33 C. J., p. 1161, n. 75, p. 1170, n. 37. (3) 9 C. J., p. 750, n. 92 New.    (4) 9 C. J., p. 885, n. 81.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley S. Kinsell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ira S. Lillick and Hunt C. Hill for Appellant.

Fitzgerald, Abbott & Beardsley for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against him in an action in which he sought to recover something over $6,000, balance due him upon a contract with defendant by which plaintiff was to act as consulting engineer in the building of a marine railway drydock at Oakland, California.

The defendant denied that the plaintiff had performed his written contract set out in his complaint and also filed an amendment to its answer setting out that the written contract between the parties did not have incorporated in it all the terms of the agreement and that, among other things, and in addition to the written contract, the plaintiff agreed at the time that the written contract was made "to personally superintend the building of said drydock and to give said plans and said superintendence his personal attention, and that said drydock was to be designed and built under his superintendence and to be of the highest class of design and as nearly perfect as a drydock could be built and of such a character that the same could be operated by an inexperienced operator without the danger of any breakdown and without the danger of any harm or danger to said drydock or any part thereof . . . that by reason of said failure and neglect of said plaintiff, said defendant was required to and did rebuild portions of said marine railway drydock

and rebuild and replace portions of the machinery designed and provided therefor, all to said defendant's damage in excess of the amount claimed by plaintiff.''

We shall not discuss the evidence in detail, because we must begin our investigations from the findings of the trial court in a case like this one, where the record contains some evidence to support those findings. The court found the foregoing allegations to be true, except that it found the representation that the drydock would be of such a character that the same could be operated by inexperienced operators without danger of a breakdown, etc., was made during the construction of the same and not at the time of the making of the contract between the parties. It was further found that at the time of the making of the written agreement, plaintiff agreed that he would give to the work to be performed by him his usual attention and would use all the skill possessed by him in doing this work and would use all the care, attention, and skill reasonably required by the character of said work. It was found that plaintiff had fulfilled his contract in all particulars, except that he had failed and neglected to give to the work his usual attention or the care or attention or skill reasonably required by said work or agreed by him to be given to said work and failed and neglected to exercise reasonable skill, care, or diligence in the performance of said work and was negligent in the performance of said work in the following particular: ''That plaintiff failed and neglected to design or specify for use in connection with the operation of said marine railway drydock any tachometer, or other device or means by which or whereby the person operating said marine railway drydock would be advised, or could know, with any reasonable degree of accuracy or certainty, the speed at which either the said marine railway drydock, or the induction motor which was a part of the equipment for the handling of said marine railway drydock, was being operated, and failed and neglected to install any such device, or to cause the same to be installed, as a part of the machinery for the operation of said marine railway drydock, or otherwise, and failed and neglected to advise or notify said defendant that such installation was proper or necessary as a part of the machinery or equipment for the operation of said marine railway drydock, and on the contrary stated and represented to said defendant that said marine

railway drydock could be properly and safely operated by an inexperienced operator, and with the equipment installed thereon, and as a part thereof, under the direction and supervision of the said plaintiff; that said marine railway drydock was not properly equipped, and that the machinery for the operation thereof, in part designed by plaintiff and in part selected and designated by plaintiff, and all of which was either designed by plaintiff or selected and designated by him, and all of which was installed under the direction of said plaintiff, was not reasonably adapted for the purpose for which the same was installed, without the installation of a tachometer or similar device to be used in connection therewith; that for at least twenty years last past the use and purposes of tachometers, and the necessity for the use of tachometers, in connection with the equipment and operation of machinery similar to the machinery installed under plaintiff's supervision as a part of such marine railway drydock equipment, having been generally known to persons in the same profession and calling as plaintiff, and for said period of time tachometers have been generally used by such persons in connection with the equipment and operation of machinery similar to the machinery installed under plaintiff's supervision as a part of said marine railway drydock equipment and that the said uses and purposes of tachometers were well known to said plaintiff at all times during the construction of said marine railway drydock.

"That by reason of the negligence of said plaintiff . . . and by reason of his failure . . . to fully and faithfully perform the work, and to do the things agreed by him to be performed and done, and on the 23rd day of August, 1922, and while said marine railway drydock was being operated by plaintiff, and in accordance with the instructions of said plaintiff, and without any negligence on the part of defendant, the said induction motor was wrecked, and the operation of said marine railway drydock was rendered impossible until after the installation of another motor and the incurring of a large expense by said defendant.''·

[1] Appellant contends that the issue upon which the trial court found against him was not properly raised by the pleadings. It is true that it is not specifically stated in the answer, but it is alleged that plaintiff failed to build a drydock of the highest class and design or as nearly per-

fect as plaintiff knew how to build it and failed to build a
drydock that could be operated by inexperienced operators
without danger of a breakdown, and that because of this
failure and negligence on the part of plaintiff, defendant
was compelled to rebuild and replace portions of the ma-
chinery designed and provided therefor. While the plead-
ing might have set forth, specifically, the incident relied
upon, nevertheless, the plaintiff tried the case without objec-
tion to evidence about this incident, and sought by testimony
offered on his own behalf to explain and excuse the absence
of the tachometer, and we think it is now too late for him
to complain that it was not specifically set forth in the plead-
ings.

[2] The appellant complains that by amendment to its
answer the defendant was permitted to set up alleged oral
agreements modifying and changing the written contract
between the parties. Plaintiff objected to this amendment
and now contends that it and the findings in response thereto
are in violation of sections 1625 and 1698 of the Civil Code
and of section 1856 of the Code of Civil Procedure. But to
concede this point to the appellant would not compel a re-
versal of the judgment. For it appears that there is enough
in the pleadings and findings relative to the written obliga-
tions of the parties to warrant the judgment. The written
contract upon which plaintiff relies and which was pleaded
by him and found by the trial court to have been entered
into by the parties contains the agreement by the plaintiff
to act as consulting engineer in the construction work con-
templated, to design the hauling machinery, and "whereas
I am continually in touch with all of my jobs, it must be
understood that the details of your work will be taken care
of directly by my office assistants, though no effort on my
part will be spared to give your work expedition and our
usual attention." Plaintiff pleaded that he had fulfilled the
terms of his contract; defendant denied this and the court
found that the plaintiff had failed to give the work his usual
attention or the care or attention or skill reasonably required
by said work or agreed by him to be given to said work, and
failed and neglected to exercise reasonable skill, care, or dili-
gence in the performance of said work and was negligent
in the performance of said work. The failure to in-
clude a tachometer in the hauling machinery with the re-

sultant damage is recited in the findings as the basis for the conclusion as to negligence and want of skill and care. There is expert testimony in the record from which this finding may be supported and so our inquiry upon appeal comes to an end. It is useless for appellant to argue that the damage was proximately caused by the negligence of defendant's servant in the operation of the machinery, for the record contains a finding that the defendant was free from negligence in the operation of the drydock at the time of the accident.

[3] Appellant devotes some time and many authorities to the proposition that the plaintiff is to be held responsible only for the ordinary skill and experience possessed by persons in his line of work. There is no dispute about this matter, but the testimony and findings are to the effect that tachometers had been in general use for many years; that they were a practical necessity upon machinery such as was used in the drydock and that their use and necessity were well known to persons in the engineering profession. Plaintiff certainly held himself out as an expert in his line when he undertook so large a responsibility as that presented by the building of one of the largest drydocks in the world to cost about $380,000. This drydock was designed to haul ships to the weight of 10,000 tons. The plaintiff was to be paid a lump sum of $10,000 for his services and a specified sum per hour for any time his assistants devoted to the work, which latter charge amounted to over $5,000. The plaintiff was to act as consulting engineer, design the hauling machinery, and generally to supervise all the construction work which was to be done by the defendant. Obviously, he should be held to a knowledge of the use and necessity for a safety device, which, the record discloses, was practically indispensable and in general use and well known to the profession and which had been included in similar hauling machinery which was installed at another large drydock under the general supervision of plaintiff.

[4] The appellant contends that there is not sufficient evidence of damage suffered by the defendant to offset the claim of plaintiff. The record might well be more specific upon this matter, but there is evidence to support the conclusion that the damage suffered by the defendant exceeded

the claim of plaintiff. There are no other objections which require discussion by us and the judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

Appellant's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1925.

All the Justices concurred.